**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LABELLA WINNETKA, INC., an Illinois corporation, | FILED: OCTOBER 24, 2008 <br> 08CV6114 <br> JUDGE DOW <br> MAGISTRATE JUDGE SCHENKIER <br> CH |
| Plaintiff, | Case No. |
| v. | |
| GENERAL CASUALTY INSURANCE COMPANY, a Florida corporation, | JURY TRIAL DEMANDED |
| Defendant. | |

**COMPLAINT**

Plaintiff LaBella Winnetka, Inc., an Illinois corporation, by and through its attorneys, for its complaint against General Casualty Insurance Company, states as follows:

**INTRODUCTION**

**Parties**

1. Plaintiff LaBella Winnetka, Inc. (hereinafter "Plaintiff" or "LaBella") is an Illinois corporation organized and existing by virtue of the laws of the State of Illinois, and as such is a citizen of Illinois. Its principal place of business is in Winnetka, Cook County, Illinois. LaBella is in the business of operating a restaurant with authentic Italian cuisine and has been one of Chicagoland's finest Italian restaurants for the past fourteen years.

2. Defendant General Casualty Insurance Company ("General Casualty") is an insurance company organized and existing by virtue of the laws of the State of Florida. As such, General Casualty is not a citizen of Illinois. Its principal place of business is in Sun Prairie, Wisconsin. At all relevant times, General Casualty was licensed by the State of Illinois to enter into insurance policies with insureds located in Cook County, Illinois.

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction over this dispute based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

**FACTUAL BACKGROUND**

**LaBella's Lease and Restaurant**

5. On May 6, 1993, LaBella entered into a Store Lease agreement (the "Lease") to lease certain property (the "Premises") at One Chestnut Court in Winnetka, Illinois 60093, and later 505 Chestnut Street, Winnetka, Illinois 60093. Thereafter, the Lease was extended from time to time, and it remained in effect up to and including July 31, 2008.

6. Rider 2 of the Lease, which controls over the terms of the Lease, provided in part that the landlord covenants to keep the roof of the Premises in good order, repair and condition at the landlord's expense. Paragraph 11 of the Lease, the terms of which were subject to Rider 2 of the Lease referred to above, provided in part that the Lease would terminate if the Premises were rendered untenantable as a result of a fire and the landlord did not repair the Premises within 60 days following the fire.

7. For a period of fourteen years, from May 6, 1993 to February 28, 2007, LaBella continuously operated LaBella Winnetka, an Italian restaurant, at the Premises in the heart of downtown Winnetka. It was owned by Marianne Gigiolio, and for years was considered the best "Al Fresco" dining venue in the northern suburbs.

8. The restaurant consisted of an entrance on Chestnut Street which led to a small dining area with a corian bar. As guests walked further into the restaurant, they entered LaBella's main dining room with seating for 106 guests. In addition to these dining areas,

LaBella had an outdoor patio with capacity for 92 guests and a large outdoor tent with capacity for up to 150 guests for weddings, birthdays, anniversaries, fundraisers, and other group parties and events.

## General Casualty Insurance Policy

9. On or about September 13, 2006, LaBella obtained an Insurance Policy (the "Policy") from General Casualty which provided broad insurance coverage for LaBella's Restaurant Premises. The Policy issued to LaBella covered the period from September 13, 2006 to September 13, 2007, and included comprehensive insurance coverage, commercial general liability coverage, liquor liability coverage, and commercial umbrella coverage. A copy of the Policy, number CCI 0496521, is attached as Exhibit A.

10. The Policy purchased by LaBella provided coverage for several kinds of losses including, *inter alia*, the following:

    A. Loss of business property on the Premises with a coverage limit of $600,000 based on replacement cost of the business property;

    B. Loss of tenants' improvements and betterments on the Premises with a limit of $160,000 based on replacement cost of these items;

    C. Loss of its outdoor tent with a coverage limit of $40,000 based on replacement cost;

    D. Loss of the restaurant's business income for a period of one year with a two-month extension beyond that date if LaBella's business was interrupted by a loss covered by the Policy; and

    E. Extra expenses coverage for expenses LaBella would not have incurred if there had not been a loss covered under the Policy.

11. The Policy also included the covenant of good faith and fair dealing implied under Illinois law.

## The Fire

12. On February 28, 2007, an employee of Avondale Group, a roofing company hired by the landlord, negligently started a fire above LaBella's Premises. The fire caused serious fire damage to the roof and LaBella's ceiling over its main dining room and also caused damage throughout the restaurant through fire, smoke and water which permeated the Premises. As a result of the fire damage to the roof, LaBella's ceiling and the entire inside of the Premises, LaBella was required to close its restaurant on that day and was unable to continue operations in the Premises as a result of the fire.

13. LaBella promptly notified General Casualty of the fire at the Premises, and made timely claims for coverage under the Policy. LaBella complied with all the terms of the Policy required of insureds in reporting a loss.

## Landlord's Failure to Replace the Roof After the Fire

14. Following the fire which damaged the roof above LaBella's restaurant and LaBella's Premises, the landlord stated that the roof would be promptly replaced as required by Rider 2 of the Lease, but those representations to LaBella were not true and General Casualty knew those representations were not true at or shortly after they were made. The landlord did not replace the roof over the Premises, and pursuant to the Village of Winnetka's directives, LaBella was not allowed to repair and replace damaged property in the Premises or to continue its operations until the roof was replaced. These facts were, at all times material, known to General Casualty and its fire loss agent and adjustor, William Jensen.

15. Thereafter, in May 2007, the landlord unlawfully terminated LaBella's Lease in violation of the terms of Rider 2 of the Lease which required the landlord to keep the roof in good order and condition at its expense.

## COUNT I
## BREACH OF CONTRACT FOR FAILURE TO PROVIDE COVERAGE

16. LaBella realleges paragraph 1 through 15 above as paragraph 16 of this Count I.

17. When LaBella agreed to obtain insurance from General Casualty for the Premises and its restaurant business, LaBella informed General Casualty and its agent that it required replacement cost coverage of $600,000 for loss of business property, $160,000 for loss of improvements and betterments, and $40,000 for loss of its outdoor tent if it lost this property as a result of a covered cause of loss such as a fire. LaBella also informed General Casualty and its agent that it required coverage for loss of income for a period of one year if its business was interrupted because of a covered loss, and coverage for any extra expenses LaBella would incur because of such a loss.

18. At all times material, General Casualty agreed to the coverage that LaBella required, and General Casualty's underwriters issued the Policy to LaBella with the replacement coverage and limits that LaBella sought and needed. General Casualty issued an invoice to LaBella for the Policy, and LaBella paid the invoice for premium for the Policy which provided coverage for the period from September 13, 2006 to September 13, 2007.

19. After the fire on February 28, 2007, LaBella's landlord did not replace the fire-damaged roof above LaBella, and terminated LaBella's Lease as a result of the damage on the roof and in the Premises caused by the fire.

20. When LaBella's Lease was terminated because of the fire damage to the roof, LaBella's ceiling and the Premises, LaBella lost its business property, its improvements and betterments, and its income from that date forward. LaBella also had extra expenses which it incurred as a result of the fire which it would not have incurred but for the fire and resulting damage to its Premises and business operations.

21. As a result of the fire and LaBella's loss of all of its business property and betterments and improvement, LaBella was and is entitled to the Policy limits of $800,000 for the cost of replacing its business property, betterments and improvements, and outdoor tent which exceed the policy limits. In addition, LaBella is entitled to payment for lost income for one year and an additional two months, and it is also entitled to payment of its extra expenses resulting from the fire.

22. Thereafter, General Casualty, by and through its agents and adjustors, and in particular William Jensen, repeatedly disputed coverage under the Policy and attempted to limit coverage, failed and refused to respond to LaBella's requests for prompt payments, and refused to provide all the payments to LaBella which were required by the terms of the Policy. At all times General Casualty knew that LaBella was entitled to coverage, that LaBella was in urgent need of payments under the Policy, having lost its sole source of income, and that General Casualty was not in compliance with the Policy.

23. LaBella has fully complied with the terms of the Policy, and through no fault of its own, LaBella has been damaged by General Casualty's breach of contract, and its refusal to comply with the terms of the Policy and provide coverage for the covered losses sustained by LaBella as a result of the fire and the events thereafter.

WHEREFORE, Plaintiff prays for entry of judgment against General Casualty for an amount greater than $75,000, for its attorneys' fees and costs, and for such further relief as this Court deems appropriate.

## COUNT II
## UNREASONABLE AND VEXATIOUS DELAY

24. LaBella realleges paragraphs 1 through 23 above as paragraph 24 of this Count II.

25. Immediately after the fire, LaBella provided notice to General Casualty of its claim and thereafter complied with all of the terms and requirements of the Policy.

26. General Casualty's failure and refusal to comply with the Policy resulted in an unreasonable and vexatious delay for LaBella in obtaining coverage under the Policy, deprived LaBella of sufficient funds to pay its bills, cover its losses and reopen its restaurant, forced LaBella to file a lawsuit to obtain coverage, and has jeopardized LaBella's ability ever to reopen a restaurant in the future.

27. LaBella is entitled to full coverage under the Policy, and it is also entitled to its attorneys' fees and $60,000 in penalties pursuant to Section 155 of the Illinois Insurance Code, 215 ILCS 5/155, because of General Casualty's vexatious and unreasonable delay in complying with the terms of the Policy.

WHEREFORE, Plaintiff prays for entry of judgment against General Casualty for an amount greater than $75,000, for its attorneys' fees and costs, for $60,000 in penalties, and for such further relief as the Court deems appropriate.

## COUNT III
## BREACH OF CONTRACT FOR FILING SUBROGATION LAWSUIT

28. LaBella realleges paragraph 1 through 27 above as paragraph 28 of this Count III.

29. At all times relevant, General Casualty improperly disputed LaBella's right to coverage under the Policy, and General Casualty repeatedly denied coverage to LaBella except

to a very limited extent, with minimal payments made to LaBella from time to time during the period following the fire when LaBella urgently needed funds to pay bills, ongoing expenses and to attempt to reopen.

30. Prior to any resolution of LaBella's claims for coverage under the Policy, General Casualty filed a subrogation lawsuit without LaBella's consent, approval, or knowledge against the roofing company which caused the fire on the roof over LaBella's restaurant.

31. At the time that General Casualty filed the subrogation lawsuit, there was a direct conflict of interest and divided loyalties between General Casualty and LaBella based on the following facts:

    A. By filing a separate action, General Casualty split LaBella's cause of action and took control over LaBella's claim against the roofing company without LaBella's consent and in derogation of LaBella's rights to control its claims against the parties that caused the fire;

    B. General Casualty, contrary to what it had been told by LaBella to General Casualty and its adjustors, asserted that LaBella's damages were minimal and far below policy limits while LaBella itself made claims for coverage up to the Policy limits, and this conflict was highly prejudicial to LaBella; and

    C. General Casualty had no loyalty to LaBella as subrogee because it knew before filing suit that the roofing company allegedly had minimal insurance coverage, and the more General Casualty established by way of damages owed to LaBella as a result of damages caused by the fire, the more General Casualty would ultimately be required to pay LaBella under

the Policy without any ability to recoup the payments to be made to LaBella.

32. General Casualty's filing of a subrogation action served only its own interests, and these actions by General Casualty were in breach of contract and taken in bad faith.

33. In further breach of its duties to LaBella as its insured, General Casualty refused to bring an action to assist its insured to gain access to its Premises, and it also refused to assist its insured in obtaining a new location for its restaurant to continue in business while at the same time it was pursuing a subrogation claim for its own benefit.

WHEREFORE, Plaintiff prays for entry of judgment against General Casualty for an amount greater than $75,000, for its attorneys' fees and costs, and for such further relief as this Court deems appropriate.

## COUNT IV
## FRAUD

34. LaBella realleges paragraphs 1 through 33 above as paragraph 34 of this Count IV.

35. When LaBella obtained insurance coverage from General Casualty, Marianne Gigiolio ("Gigiolio") as sole shareholder of LaBella, informed General Casualty and its agent, William Riordan ("Riordan"), that LaBella required coverage for replacement of its business property, its betterments and improvements, and its outdoor tent if it lost that property as a result of a covered loss such as a fire. Riordan then recommended that LaBella obtain coverage based on replacement cost of its business property, its betterments and improvements, and its outdoor tent to which Gigiolio agreed on behalf of LaBella. Thereafter, they mutually determined and agreed that LaBella required $600,000 in coverage for replacement of business property,

$160,000 in coverage for replacement of its betterments and improvements, and $40,000 for its outdoor tent if LaBella lost this property as a result of a covered loss.

36. LaBella also informed General Casualty and its agents that LaBella required coverage for loss of income for one year and for reimbursement of extra expenses if its business operations were interrupted by a loss such as a fire.

37. At no time did General Casualty or Riordan inform LaBella that LaBella would not be entitled to replacement coverage for its business property and its betterments and improvements if LaBella was precluded from re-opening and replacing its property at the Premises or at a new location as a result of damage caused by a fire. At no time did they inform LaBella that General Casualty would refuse to reimburse LaBella for lost income for more than three months even when General Casualty knew that LaBella had no foreseeable income at all as a result of a covered loss such as a fire.

38. Following the discussions between Gigiolio and Riordan regarding LaBella's insurance requirements, General Casualty and its underwriters wrote a Policy for LaBella which provided for coverage of $600,000 for business property based on replacement cost, coverage of $160,000 for betterments and improvements based on replacement cost, coverage of $40,000 for the outdoor tent based on replacement cost, coverage for loss of business income up to one year, and coverage for extra expenses incurred by LaBella as a result of a loss covered by the Policy. General Casualty invoiced LaBella for the Policy, and LaBella paid the premium for the Policy for the period from September 13, 2006 to September 13, 2007.

39. After the fire on February 28, 2007, General Casualty and its adjustor, William Jensen, learned that the landlord did not intend to replace the roof because of lack of insurance coverage for that work which was required by Village of Winnetka officials, and that the

landlord would terminate LaBella's Lease because of damage caused by the fire. At the same time, General Casualty and Jensen knew of LaBella's precarious financial condition because of the fire and the loss of its only source of income.

40. Although General Casualty knew all of these facts, General Casualty and its agents and adjustors refused to take any action to inform LaBella of these facts and/or to compel the landlord to replace the roof and/or to contest the landlord's wrongful termination of the Lease, and they refused to take any action to assist its insured so LaBella could get back into its restaurant space to begin the work of replacing damaged property and re-open its business. In fact, the only action taken by General Casualty was to retain counsel for a subrogation lawsuit for its own benefit while refusing to assist its insured so it could re-open its restaurant in the Premises. At no time did General Casualty offer to tender to LaBella the policy limits for which LaBella paid the insurance premiums.

41. General Casualty and its agents and adjustor repeatedly disputed and denied LaBella's requests for timely payment for losses covered under the Policy. They seized the opportunity presented by the landlord's refusal to replace the roof damaged by the fire as a means of limiting or eliminating its pecuniary risk by refusing to pay LaBella for all of its losses which were readily foreseeable as a result of LaBella's loss of its Lease and restaurant because of the fire.

42. General Casualty put its financial interests ahead of LaBella's right to coverage under the Policy and committed a fraud on LaBella as follows:

    A.    Although General Casualty represented to LaBella that it had coverage of $600,000 for replacement of business property, $160,000 for replacement of betterments and improvements, and $40,000 for its outdoor tent,

General Casualty, in order to avoid the obligations under the Policy, purposely obstructed LaBella's attempts to move back into the Premises so LaBella could repair and replace its business property and improvements and betterments, and reopen its restaurant. General Casualty also refused to assist LaBella in its attempt to move to a new location to reopen its restaurant. After taking these actions and/or refusing to act, General Casualty then claimed that LaBella forfeited its right to replacement coverage of $800,000 under the Policy because it did not and could not reopen its restaurant, and it claimed, and continues to claim, that LaBella is only entitled to $1,549 for loss of betterment and improvements, and less than $10,000 for loss of business property even though LaBella lost all of its property and had $800,000 in coverage.

B. General Casualty initially misrepresented to LaBella that its claim for lost income was only for three months, and it refused to pay the claim for lost business income for a period of one year even though General Casualty knew, as early as May 2007, that the landlord had terminated LaBella's Lease, and that LaBella was forced out of business altogether. General Casualty acknowledged internally in its own documents that LaBella was entitled to lost income for the entire year, but it failed and refused to so advise LaBella or pay LaBella for lost income knowing full well from its discussions with LaBella and its representatives that without such funds, LaBella would not be able to sue the landlord or establish a new restaurant.

  C. Several months after the fire, LaBella asked to rent temporary kitchen facilities in an attempt to save its business from total ruin. General Casualty first informed LaBella that it provided coverage for this request as an extra expense, but that was a misrepresentation because General Casualty refused to approve a bid from one of the few companies offering these facilities claiming the bid was "too high."

  D. General Casualty failed to communicate timely to LaBella facts it knew as early as April 2007, regarding the landlord's refusal to replace the roof which would have given General Casualty the responsibility to seek injunctive relief from the landlord's unlawful conduct and wrongful termination of the Lease.

43. LaBella relied on General Casualty's representation that it would have the coverage requested and set out in the Policy in case of a fire; LaBella's reliance was reasonable.

44. As a result of General Casualty's misrepresentations and deceptive and unfair practices, LaBella has lost all of its business property, its betterments and improvements, and its outdoor tent. In addition, LaBella has lost income for more than a year and has incurred extra expenses. LaBella has been denied coverage that it paid for under the Policy sold to LaBella by General Casualty.

WHEREFORE, Plaintiff prays for entry of judgment against General Casualty, for its attorneys' fees and costs, for punitive damages, and for such further relief as this Court deems appropriate.

## COUNT V
## CONSUMER FRAUD

45. LaBella realleges paragraphs 1 through 44 above as paragraph 45 of this Count V.

46. At all times relevant, there was in effect in Illinois the Consumer Fraud Act which provides in material part as follows:

> "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

47. General Casualty's representations to LaBella regarding coverage under the Policy, and its action thereafter to obstruct LaBella from obtaining such coverage and to deny coverage were deceptive, fraudulent and unfair acts in the conduct of trade or commerce.

48. General Casualty and its agent, William Jensen, have engaged in numerous unfair and deceptive actions regarding the handling of this fire loss including, but not limited to, misleading statements at meetings of the interested parties; secret, undisclosed contact with the landlord and its authorized representative, William Jensen; suppression of pertinent information regarding the state of the roof repairs and other material facts, including the refusal of AIG to pay for the replacement of the roof; all with the intent and purpose that LaBella would rely on the representations and public statements of General Casualty and William Jensen and be lulled into inaction by the intentional failure to provide the information LaBella required in order to protect itself.

49. General Casualty's conduct as set out above and detailed in the internal documents and reports of William Jensen was unlawful and in violation of the Illinois Consumer Fraud Act and were done for the express purpose of assisting General Casualty in limiting its pecuniary obligations to LaBella by reason of the fire which resulted through no fault of its own

and for which it believed in good faith there was insurance coverage to protect it against such a loss.

WHEREFORE, Plaintiff prays for entry of judgment against General Casualty, for its attorneys' fees and costs, for punitive damages, and such further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands trial by jury of all matters herein triable to a jury.

Dated:  October 24, 2008                Respectfully submitted,

By:  /s/ Dean A. Dickie
     One of the Attorneys for Plaintiff
     LaBella Winnetka, Inc.

Dean A. Dickie, ARDC No. 0631744
Lee T. Hettinger, ARDC No. 1206397
Sara C. Arroyo, ARDC No. 6288962
DYKEMA GOSSETT PLLC
10 South Wacker Drive - Suite 2300
Chicago, IL  60606
(312) 876-1700

CHICAGO\2525841.6
ID\LTH