# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LABELLA WINNETKA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08-cv-6114 |
| ) | |
| GENERAL CASUALTY INSURANCE ) | Judge Robert M. Dow, Jr. |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This case arises out of a five-count complaint filed by Plaintiff, LaBella Winnetka, Inc., against Defendant, General Casualty Insurance Company, for violations of state contract and tort law. The Court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332.

Before the Court are Defendant's motion to dismiss Count III of Plaintiff's complaint [22], as well as Defendant's motion to dismiss Counts IV and V of Plaintiff's complaint [20]. For the reasons stated below both motions are denied.

**I.    Background[1]**

Plaintiff operates an Italian restaurant in Winnetka, Illinois. (Compl. ¶ 1.) Plaintiff had leased the same premises for its operations since 1993. (*Id*. ¶ 5.) In September 2006, Plaintiff obtained an insurance policy ("the Policy") from William Riordan, an agent of Defendant. The Policy provided one year's coverage for, among other things, loss of business property, loss of improvements made by the tenant to the property, and loss of business income. (*Id*. ¶¶ 9-10.)

---

[1] For purposes of Defendant's motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

The complaint alleges that while the Policy was in force, a third-party roofing company's employee negligently started a fire above Plaintiff's premises, causing fire, smoke, and water damage. (Compl. ¶ 12.) Plaintiff had to close its restaurant on that day and cease its operations. (*Id.*) Plaintiff notified Defendant of the fire and made claims for coverage up to the policy limits, which Plaintiff claims are owed under the terms of the policy. (*Id.* ¶¶ 21-22.) Defendant has refused to pay the full amount that it owes. (*Id.* ¶ 37.)

The complaint further alleges that in order to avoid full payment to Plaintiff, Defendant purposely obstructed Plaintiff's attempts to move back into the premises and reopen its restaurant, and it refused to assist Plaintiff in attempting to move to a new location to reopen its restaurant. (Compl. ¶ 42.) More specifically, after the fire, Defendant learned through its adjustor, William Jensen, that Plaintiff's landlord did not intend to replace the roof and, pursuant to the lease agreement, planned to terminate the lease because of the damage caused by the fire. (*Id.* ¶ 39.) Defendant took no action to inform Plaintiff of the landlord's plans, nor did Defendant fulfill its duty to file an injunction against the landlord. (*Id.* ¶¶ 40, 42(D).) Plaintiff alleges that Defendant had the "intent and purpose that [Plaintiff] would rely on the representations and public statements of [Defendant] and William Jensen and be lulled into inaction by the intentional failure to provide the information [Plaintiff] required in order to protect itself." (*Id.* ¶ 48.)

According to Plaintiff, after making partial payment to Plaintiff, Defendant filed a subrogation lawsuit against the third party roofing company that caused the fire above Plaintiff's premises. Defendant filed the suit without Plaintiff's consent, approval, or knowledge. (Compl. ¶¶ 29-30.) Plaintiff alleges that Defendant knew that the roofing company had minimal

insurance coverage and filed the lawsuit in order to minimize its own liability to Plaintiff. (*Id*. ¶ 31.)

Plaintiff's complaint contains five counts: (I) breach of contract for failure to provide coverage; (II) unreasonable and vexatious delay under 215 ILCS 5/155; (III) breach of contract for filing subrogation lawsuit; (IV) fraud; and (V) consumer fraud pursuant to Illinois' Consumer Fraud Act, 815 ILCS 505/2. Before the Court are Defendant's motions to dismiss the third [22], fourth, and fifth counts [20].

## II. Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests."[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all

---

[2] A complaint alleging a violation of the Illinois Consumer Fraud Act must be pleaded with the same particularity and specificity under Rule 9(b) as that required for common law fraud. See, *e.g.*, *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 731 (N.D.Ill. 2005).

reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III.   Analysis**

    **A.   Count III – Breach of Contract for Filing Subrogation Lawsuit**

Count III alleges breach of contract for prematurely filing a subrogation lawsuit against the roofing company that caused the fire above Plaintiff's restaurant. In its motion to dismiss Count III, Defendant argues that it did not need to extinguish its debt before filing the subrogation suit, because its subrogation right was established by the terms of the Policy. In short, Defendant argues that it was subrogated to Plaintiff's claims once it made *any* payment under the Policy. Defendant further argues, although only in its reply memorandum, that even if it did breach its contract by filing the subrogation lawsuit, Plaintiff fails to state a claim because it has not sustained an injury or any damages. Defendant's damages argument presents what typically is a quintessential question of fact (*Doe By and Through Doe v. Montessori Sch. of Lake Forest*, 678 N.E.2d 1082, 1091 (Ill. App. Ct. 1997)) and raises the argument only in its reply brief; therefore, the argument is not properly before the Court. *United States v. Adamson*, 441 F.3d 513, 521 n.2 (7th Cir. 2006) (party forfeits an argument if it is raised for the first time in a reply brief). Accordingly, the Court focuses only on Defendant's chief argument—that from the moment it made any payment Defendant had a contractual right to step into Plaintiff's shoes and file a lawsuit against the roofing company.

Subrogation rights may arise from an express or implied agreement ("contractual" or "conventional" subrogation) or may be grounded in equity and applied as a matter of law. *Am. Nat'l Bank & Trust Co. of Chi. v. Weyerhaeuser Co.*, 692 F.2d 455, 460 & n.12 (7th Cir. 1982). Equitable subrogation implicates a body of equitable principles, which include a requirement that

4

"the claim or debt under which the subrogee asserts his rights [be] paid in full." *Id*. at 461. Contractual subrogation rights, by contrast, are not governed by these principles. Where an insurance policy provides an enforceable subrogation clause, the right of an insurer must be measured by, and depend solely on, the terms of such provisions. *Spirek v. State Farm Mut. Automobile Ins. Co.*, 382 N.E.2d 111, 117 (Ill. App. Ct. 1978) (quoting 15 COUCH ON INSURANCE 2d § 61:23, at 254). In Illinois, subrogation clauses in insurance contracts generally are enforceable. *In re Estate of Scott*, 567 N.E.2d 605, 606 (Ill. App. Ct. 1991).

The policy at issue in this case contains a subrogation provision. The provision provides that

> [i]f any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them.

[1-2, at 34].

The problem for Defendant is that Illinois courts follow the "general rule * * * that partial subrogation will not be allowed where the debt has not been paid in full." *Hardware Dealers Mut. Fire Ins. Co. v. Ross*, 262 N.E.2d 618, 621 (Ill. App. Ct. 1970). In *Hardware Dealers*, the Illinois Appellate Court upheld a trial court's determination than an insurer-subrogee's subrogation rights did not accrue upon partial payment made by a third party to an insured-subrogor. 262 N.E.2d 618, 621 (Ill. App. Ct. 1970). The pertinent policy language in that case provided a subrogation right "in the event of *any* payment * * * of this policy." *Id*. at 620 (emphasis added); see also *Providence Wash. Ins. Co. v. Am. Bridge Div. of U.S. Steel Corp.*, 558 N.E.2d 396, 397 (Ill. App. Ct. 1990) (until a subrogee fully pays on the underlying claim "the insurer's right to subrogation is future, contingent and uncertain"); *Robbins v. Slavin*, 11

5

N.E.2d 651, 656 (Ill. App. Ct. 1937) (allowing the subrogation after partial payment "would operate to place [the subrogee] upon a footing of equality with the holders of the unpaid part of the debt" creating the potential for disproportionate loss to fall on the subrogor); *Aetna Cas. & Surety Co. of Hartford Conn. v. Village of Maywood*, 262 Ill. App. 206 (1931).

Defendant's reply brief argues that the foregoing principles apply to equitable subrogation, but do not apply where subrogation is provided in a contract. Unfortunately, Defendant does not cite any subrogation cases in its motion to dismiss, and its reply memorandum points out only that the cases cited by Plaintiff were equitable subrogation cases. Defendant does not cite to a case that supports its argument. Indeed, the Court's research suggests that Defendant's reply brief highlights a distinction without a difference.[3] The facts of *Hardware Dealers* suggest as much, and at least one other Illinois court has explicitly held as much. In *Johnson v. State Farm Fire & Cas. Co.*, the Illinois Appellate Court held that the mere fact of a subrogation provision in a contract "with the insured does not alter the basic requirement that [the insurer] must first pay its insured before it may maintain a suit against the alleged tortfeasor * * * ." 503 N.E.2d 602, 604 (Ill. App. Ct. 1987). In *Johnson*, the contractual subrogation provision stated: "This Company may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment therefore is made by this Company." *Id*. (alteration omitted). The subrogation provision at issue in this case is similar to the one in *Johnson*, subrogating Defendant to Plaintiff's claim "to the extent of [Defendant's] payment." Defendant has not furnished the Court with contrary authority.

As Defendant notes in its forfeited damages argument, it is difficult to see from Plaintiff's complaint what damages Plaintiff suffered. For instance, it seems that Plaintiff could have intervened in the action or the roofing company could have prevailed on a motion to

---

[3] At least where a subrogation provision in a contract does not alter the equitable rule.

6

dismiss the subrogation action for failure to join an indispensible party. Although it is not clear to the Court how damages could have attached, Plaintiff was never given an opportunity to respond to Defendant's arguments, and the facts related to the aborted subrogation suit are not in the record. Although these observations suggest the possibility that Defendant may prevail on Count III at summary judgment, Defendant's motion to dismiss Count III is denied.

### B. Count IV – Common Law Fraud

Count IV alleges common law fraud. In order to prevail on a claim for common law fraud in Illinois, a Plaintiff ultimately must prove: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996). Defendant's motion to dismiss argues that Plaintiff failed to plead the "who, what, where, and when" of the alleged fraud with the particularity required by Federal Rule of Civil Procedure Rule 9(b). The Court respectfully denies Defendant's motion.

When a plaintiff makes averments of fraud, Federal Rule of Civil Procedure 9(b) requires the plaintiff to plead "the circumstances constituting fraud * * * with particularity." *In re HealthCare Compare Corp. Secs. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996). The "circumstances" of fraud "include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Svcs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quotation marks omitted). Where a party wishes to attack the theory of a case, as opposed to its want of detail, the rule to invoke is Federal Rule of Civil Procedure 12(b)(6). However, for Rule 9(b) purposes, a person pleading fraud need not

7

reveal the theory of his or her case. *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 523-24 (7th Cir. 1993).

Defendant argues that Plaintiff's complaint fails to plead the circumstances constituting fraud with the particularity that Rule 9(b) requires. Invoking the rule, Defendant identifies three shortcomings in Plaintiff's complaint: (i) the alleged misrepresentations occurred after contract formation; (ii) there are no allegations of conduct that induced Plaintiff to act; and (iii) Plaintiff has failed to allege that it relied on Defendant's alleged misrepresentations. The first of Defendant's arguments speaks to the legal sufficiency of Plaintiff's claim rather than the particularity of Plaintiff's averments of fraud—that argument fails as both a factual matter and a legal matter. As to the latter two arguments, the Seventh Circuit has explicitly held that a Plaintiff need not plead the elements identified by Defendant in order to satisfy Rule 9(b)'s particularity requirement.

Defendant argues first that the representations that Plaintiff alleges in its fraud count were made only after the contract was formed. Of course, that argument does not speak to the particularity with which Plaintiff made its allegation; rather it relates to the legal sufficiency of Plaintiff's claim. A motion that challenges the legal sufficiency of a complaint is properly brought pursuant to Rule 12(b)(6), although the Court may consider a motion despite a movant's reliance on the wrong rule. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996). Regardless of the rule, however, Defendant's argument fails, both as a factual matter and as a legal matter. As a factual matter, Plaintiff's complaint does include pre-contractual statements as part of its fraud count: Plaintiff begins its claim for fraud by reincorporating the rest of its complaint and then specifically re-alleging the pertinent *pre-contractual* communications and alleged omissions, which form part of Plaintiff's fraud claim.

(Compl. ¶¶ 34-37.) Likewise, Defendant's argument fails as a legal matter: Defendant points to no case law that teaches that fraud claims must be based on pre-contractual statements. Indeed, even if the fraudulent conduct occurred after the contract was formed, Plaintiff can make out its case. For example, it is conceivable that Defendant perpetrated a fraud by concealing information from Plaintiff after the fire. See, *e.g.*, *Washington Courte Condo. Ass'n-Four v. Wash.-Golf Corp.*, 643 N.E.2d 199, 216 (Ill. App. Ct. 1994); *Miner v. Fashion Enters., Inc.*, 794 N.E.2d 902, 917 (Ill. App. Ct. 2003); see also *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247 (7th Cir. 1994) (plaintiff receives the "benefit of imagination" at the motion to dismiss phase).

Defendant's final two arguments—that Plaintiff failed to satisfy Rule 9(b)'s particularity requirement because (i) Plaintiff did not identify any statements that induced Plaintiff to act and (ii) Plaintiff has not alleged that it relied on Defendant's representations—have been explicity rejected by the Seventh Circuit. In *Midwest Commerce Banking Co. v. Elkhart City Centre*, the Seventh Circuit addressed whether, for Rule 9(b) purposes, a plaintiff must allege each element of common law fraud. Judge Posner, writing for the court and expounding on Rule 9(b)'s requirements, answered the question in the negative:

> All Rule 9(b) required * * * was that [the plaintiff] set forth the date and content of the statements or omissions that it claimed to be fraudulent. [The plaintiff] was not required to go further and allege the facts necessary to show that the alleged fraud was *actionable*. That * * * would certainly entail allegations demonstrating the falsity of any representations or omissions, [the plaintiff's] reliance on the defendant's misrepresentations or omissions, and the reasonableness of that reliance. *None of that was required [under Rule 9(b)]*.

4 F.3d at 524 (emphasis added).

Defendant's argument falls squarely within, and runs up against, the clear teaching of the Seventh Circuit. Because the Court concludes that Plaintiff's complaint satisfies the particularity

9

requirement of Federal Rule of Civil Procedure 9(b), Defendant's motion to dismiss Count IV is respectfully denied.

### III. Count V – Violation of Illinois Consumer Fraud Act

Count V alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (the "CFA" or "Act"). The CFA prohibits the "employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact * * * in the conduct of any trade or commerce * * *." 815 ILCS 505/2. In addition, the Act prohibits or regulates numerous specific activities. See 815 ILCS 505/2A-2GGG. The fundamental concern of the Act is consumer protection (*Web Commc'ns Group, Inc. v. Gateway 2000, Inc.*, 889 F. Supp. 316, 323 (N.D.Ill. 1995)), and while the plain language of the CFA outlaws deceptive conduct generally, violations of the CFA are *actionable* only where consumer protection concerns are implicated. *Downers Grove Volkswagen, Inc. v. Wigglesworth Imps., Inc.*, 546 N.E.2d 33, 40 (Ill. App. Ct. 1989).

Defendant's motion to dismiss invokes Federal Rule of Civil Procedure 12(b)(6), arguing that Count V should be dismissed for failure to state a claim because (i) Plaintiff does not have standing under the Act and (ii) Plaintiff's claim is merely a contract dispute that does not rise to the level of consumer fraud. The Court concludes, however, that Plaintiff's complaint sufficiently states a CFA claim for pleading purposes. Therefore, Defendant's motion to dismiss Count V is respectfully denied.

Plaintiff has sufficiently established for pleading purposes that it has standing to bring a claim. The Act by its terms allows a corporation to qualify as a "consumer" who can bring suit, so long as it "purchases or contracts for the purchase of merchandise * * * for his use or that of a

member of his household." 815 ILCS 505/1(e), 1(c). Because the sale of insurance qualifies as merchandise, insureds are considered consumers within the Act. *Leona's Pizzeria, Inc. v. Nw. Nat'l Cas. Co.*, 203 F. Supp. 2d 930, 933 (N.D. Ill. 2002) (citing *Fox v. Indus. Cas. Ins. Co.*, 424 N.E.2d 839, 842 (Ill. App. Ct. 1981)). The cases cited by Defendant support the proposition that when both parties to a transaction are businesses who are *not* consumers, a plaintiff must satisfy a heightened standard—the so-called "consumer nexus test." See *Stepan Co. v. Winter Panel Corp.*, 948 F.Supp. 802, 805-06 (N.D. Ill. 1996); *Indus. Specialty Chems.*, 902 F.Supp. 805, 811-12 & n.9 (N.D. Ill. 1995) (citing language that appears favorable to Defendant but also referencing the broad definition of "consumer" under the Act). But the teachings embodied in those cases are orthogonal to the issues in *this* case, in which Plaintiff alleges that it is a consumer for whom the heightened standards do not apply. *Century Universal Enters., Inc. v. Triana Dev. Corp.*, 510 N.E.2d 1260, 1270 (Ill. App. Ct. 1987) (limiting the application of the Act where the parties were businessmen who did *not* qualify as "consumers of each other's goods or services"). Because Plaintiff plausibly alleges that it is a consumer within the meaning of the Act, it has sufficiently alleged standing to maintain its CFA claim.

Defendant's second argument is that Plaintiff has made out a case only for a simple breach of contract action. Defendant is correct that the CFA does not apply to every breach of contract action. *Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988, 992-93 (Ill. App. Ct. 2000) (noting that in the strictest sense a "'misrepresentation' occurs every time a defendant breaches a contract"); *Lake County Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors*, 654 N.E.2d 1109, 1115-16 (Ill. App. Ct. 1995) ("[I]f litigants could invoke the Act merely by alleging an intentional or fraudulent breach of a contract, common-law breach of

11

contract actions would be supplemented in every case with an additional and redundant remedy under the Act.").

Defendant's motion to dismiss cites only the *Zankle* case and asserts that Plaintiff has stated nothing more than a claim for breach of contract. To prevail on a CFA claim, a plaintiff must prove that (1) the defendant engaged in a deceptive act or practice, (2) with the intent that the plaintiff rely on the deception, (3) in the course of trade or commerce, and that (4) the deception was the proximate cause of the claimant's alleged injury. See, *e.g.*, *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 731 (N.D.Ill. 2005) (citing *Neff v. Capital Acquisitions & Mgmt. Co.*, 238 F. Supp. 2d 986, 994 (N.D.Ill. 2002); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). Here, although Plaintiff does not include a great deal of detail in its complaint, Plaintiff alleges precisely that which it ultimately must prove under Illinois law. (Compl. ¶¶ 47-49). Whether there is a triable issue on those elements presents a question whose answer the Court must reserve for a later date: Rule 12(b)(6) does not furnish parties with a tool "for resolving a contest about the facts or the merits of the case." *Stepan*, 948 F.Supp. at 805 (citing 5A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, § 1356 (1990)).

Finally, Defendant intimates that Plaintiff's CFA claim is preempted by Section 155 of the Illinois Insurance Code. However, because Defendant raised that argument only in its reply brief, the argument was waived and cannot be considered at the motion to dismiss stage. *Adamson*, 441 F.3d at 521 n.2.

## V. Conclusion

For the reasons stated above, Defendant's motion to dismiss Count III of the complaint [22] is denied. Defendant's motion to dismiss Counts IV and V of the complaint [20] is also denied.

Dated:  August 19, 2009  _____
Robert M. Dow, Jr.
United States District Judge